UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE MOORE (#211716)                                CIVIL ACTION

VERSUS

RAMAN SINGH, ET AL.                                     NO. 17-0191-SDD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 30, 2018.

*/s/ Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**THEODORE MOORE (#211716)**                             **CIVIL ACTION**

**VERSUS**

**RAMAN SINGH, ET AL.**                                  **NO. 17-0191-SDD-EWD**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss of Defendants Raman Singh and Randy Lavespere (R. Doc. 17). This Motion is opposed.

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this proceeding pursuant to 42 U.S.C. § 1983 against Dr. Raman Singh, Dr. Randy Lavespere, Warden Darrell Vannoy, Medical Warden Tracy Falgout, and Secretary James LeBlanc, complaining that Defendants have violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs, specifically by implementing an alleged unconstitutional policy and by failing to provide appropriate treatment and accommodation for his inguinal hernia.

In response to Plaintiff's allegations, the moving Defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges that he has been diagnosed with a left inguinal hernia and has been made to suffer for an unreasonable period of time without surgical intervention that he asserts is necessary for his condition. He asserts that the hernia is large and causes intense daily pain. He alleges that the hernia interferes with and limits all of his daily activities and is

tolerable only when he is lying down and immobile. He alleges that the hernia causes loops of his intestines to descend into his scrotum which causes intense pain. He asserts that the hernia has been diagnosed as being "reducible," meaning that it can be physically manipulated such that any protrusion can be pushed back into his body. Notwithstanding, when his intestines are pushed back into his stomach, they are often twisted or strangulated, such that he must endure substantial pain until gas or the passage of food causes the intestines to become untwisted. He further asserts that this is a dangerous practice and creates a dangerous situation that not only enlarges the hernia over time but can result in strangulation of the blood supply to the intestines such that an emergency life-threatening situation can develop very quickly. Finally, he asserts that whereas he has been seen and evaluated by physicians at LSP, they have refused to recommend surgery solely because the hernia is reducible, and they have failed to refer him for a consultation with a surgeon to evaluate the need for surgical intervention.

In addition to the foregoing, Plaintiff asserts that in 2013, Defendant Raman Singh instituted a new written policy addressing the care and treatment of inmates suffering with hernias who are confined at institutions governed by the Louisiana Department of Public Safety and Corrections. According to Plaintiff, this policy denies surgical intervention to all inmates with reducible hernias and also denies even referrals for surgical evaluation for such inmates. Plaintiff asserts that the reason for this policy is solely because of the cost and expense of surgical intervention were all hernias potentially subject to surgical repair. Plaintiff further asserts that surgical consults are avoided because Defendants have explicitly recognized that once a surgeon has documented the need for surgical intervention, "it is hard to overrule this decision." *See* R. Doc. 1 at p. 7. As a result, the policy separates inmates diagnosed with hernias into two categories, with the first being "Reducible Hernia – to be managed non-operatively by primary

care physician at prison," and the second being "Non-reducible Hernia – MD will refer to General Surgery." *See Id*. at p. 8.  Finally, Plaintiff asserts that even obtaining a necessary surgical referral from an LSP staff physician is obstructed by the policy because "[a] request for permission to send a surgical referral from LSP staff physicians to [Department] Headquarters must first be approved by LSP Medical Director (Defendant Randy Lavespere) who then sends the request for surgical referral to [Department] Headquarters where Defendant Raman Singh must then approve the request to submit a surgical referral to the outside facility." *See Id*. at p. 11.  According to Plaintiff, Defendants utilize this procedure to unreasonably delay authorizations for needed surgery consultations.  In addition, Plaintiff asserts that Defendant Singh has established generally four tiers of priority for all specialist, surgery and diagnostic consultation requests, *i.e.*, Level 1 – low; Level 2 – routine; Level 3 – urgent; and Level 4 – emergent, and Plaintiff complains that Defendants utilize these priority levels to further delay the process of obtaining surgical consultations by failing to properly prioritize the need.  *See Id*. at p. 14.  Plaintiff asserts that he meets the guideline for a specialty care referral, including the large size of his hernia and the daily pain and limitations that he suffers.  Plaintiff further asserts that he has been informed by LSP medical personnel that a request for a surgical consultation has been made and has been sent to Department Headquarters and to the LSU General Surgery Clinic.  *See id*. at p. 12.  *See also* R. Doc. 1-1.  Notwithstanding, Plaintiff states that he is not convinced of the truth of this representation, and he alleges, "for purposes of this Complaint," that no surgical consult has been approved or requested by Defendants   *See id*. at p. 13.[1]

In response to Plaintiff's allegations, Defendants Singh and Lavespere assert that they are

---

1    In a supplemental pleading, Plaintiff acknowledges that he has now been provided with a surgical repair of his hernia.  *See* R. Doc. 7 at p. 2.  As a result, his request for injunctive relief compelling the performance of this surgery has been rendered moot.

entitled to qualified immunity in connection with Plaintiff's claims. Specifically, these Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in any violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes, although the issue is a close one, that Defendants' Motion to Dismiss should be denied at the present time.

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice, misdiagnosis or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768. Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Applying the foregoing principles, the Court finds that Plaintiff has alleged facts sufficient to support a potential claim of deliberate medical indifference on the part of Defendants herein. First, Plaintiff has alleged that Defendants are responsible for the creation and the wrongful implementation of an alleged unconstitutional policy that precludes hernia surgeries in all

instances in which the hernia is found to be reducible and which policy results in the denial of surgical consultations and/or inordinate delays in obtaining such consultations and in thereafter obtaining needed surgery. According to Plaintiff, this policy has been instituted solely for monetary reasons and not for reasons associated with the medical needs of the inmates or the associated treatable pain suffered by the inmates. Inasmuch as a lack of financial resources cannot be invoked as the sole justification for the denial of an inmate's constitutional rights, *see Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 748, 766 (1992), and inasmuch as even non-life-threatening conditions that result in severe pain may be seen to constitute a serious medical need that requires appropriate medical intervention, *see Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), the Court finds that Plaintiff has adequately stated a potential constitutional claim relative to the referenced policy that has allegedly been instituted and implemented by Defendants and that allegedly results in intentionally-imposed inordinate delays in the performance of needed surgical interventions.

Whereas Defendants are correct that (1) Plaintiff's mere disagreement with determinations made by qualified medical personnel relative to appropriate care and treatment for his condition does not generally support a constitutional claim, and (2) a failure to refer an inmate plaintiff for additional treatment, diagnostic testing or evaluation is generally a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference, *see Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009), Plaintiff's well-pleaded allegations relative to an alleged 3-year delay and denial of appropriate care and the alleged existence of unconstitutional policies that intentionally create such delay and

denial are sufficient at this stage of the proceedings to overcome these general rules.[2] The Court further notes that in reported decisions wherein judgments have been entered in favor of prison medical personnel who have denied or delayed surgical intervention in cases of reducible hernias, the decisions, for the most part, have been decided on motion for summary judgment or after hearings that have included the evaluation of evidentiary submissions. *See, e.g., Barrett v. Mississippi Dept. of Corrections*, 427 Fed. Appx. 349 (5th Cir. 2011) (bench trial); *Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir. 2007) (evidentiary hearing); *Jones v. Schmidt*, No. 13-685-JJB-RLB, 2014 WL 6772493 (M.D. La. Dec. 1, 2014) (summary judgment); *Mesa v. Kasule*, No. 9:12cv42, 2013 WL 2151706 (E.D. Tex. May 15, 2013) (evidentiary hearing); *Vallado v. Segovia*, No. C-11-277, 2012 WL 1424982 (S.D. Tex. Apr. 24, 2012) (summary judgment); *Lopez v. Hanson*, No. 9:10cv124, 2011 WL 2472603 (E.D. Tex. June 20, 2011) (summary judgment). In the instant case, because Defendants' Motion has been filed pursuant to Fed. R. Civ. P. 12(b)(6), which is normally decided upon a consideration of the parties' pleadings alone and may not generally include a consideration of evidence or documentation, the Court does not have the ability to review either the written policies referred to by Plaintiff in his Complaint or any of Plaintiff's medical or administrative records filed in the record by Defendants. Accordingly, the Court finds it

---

2    The Court notes that when a sufficient evidentiary showing is properly before the Court for review, in the context of a motion for summary judgment or otherwise, it is likely that Plaintiff will have a difficult time in meeting his burden of proof and thereby establishing that there has been significant unreasonable delay in this case or that an existing policy or policies have resulted in harm in fact to him. For example, a review of Plaintiff initial administrative grievance – which is not before the Court in the context of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) – suggests that Plaintiff first suffered the hernia of which he complains herein in September 2016, only six months prior to the commencement of this proceeding. *See* R. Doc. 31-4 at p. 7. As such, this appears to belie his allegation in the Complaint that he has suffered from intractable pain resulting from this hernia for "the last 3 years." *See* R. Doc. 1 at p. 6.

appropriate to defer a resolution of Plaintiff's claims pending an evidentiary showing on motion for summary judgment that will allow the Court to better evaluate same.

To the extent that Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, the Court concludes that any state law claims would potentially predominate over the federal claims arising under the Eighth Amendment to the United States Constitution. Accordingly, the Court recommends that supplemental jurisdiction be declined in connection with any potential state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline supplemental jurisdiction relative to Plaintiff's potential state law claims. It is further recommended that the Motion to Dismiss of Defendants Raman Singh and Randy Lavespere (R. Doc. 17) be denied and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on August 30, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**