## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**THEODORE MOORE (#211716)**                    **CIVIL ACTION NO.**

**VERSUS**                                                         **17-191-SDD-EWD**

**RAMAN SINGH, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 9, 2019.

*/s/ Erin Wilder-Doomes*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THEODORE MOORE (#211716)** | **CIVIL ACTION NO.** |
| **VERSUS** | **17-191-SDD-EWD** |
| **RAMAN SINGH, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are cross-motions for summary judgment.[1] Defendants have also filed an Opposition to Plaintiff's Motion for Summary Judgment.[2] Plaintiff did not file a timely opposition to Defendants' Motion for Summary Judgment. For the following reasons, the undersigned recommends that the Motion for Summary Judgment[3] filed on behalf of Defendants be granted, dismissing Plaintiff's claims with prejudice, and that the Motion for Summary Judgment[4] filed by Plaintiff be denied.

**I.    Background**

*Pro se* Plaintiff, Theodore Moore ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Dr. Raman Singh (former medical director for Louisiana Department of Public Safety and Corrections ["DPSC"]), Dr. Randy Lavespere (LSP medical director), Warden Darrell Vannoy, Medical Warden Tracy Falgout, and Secretary James Leblanc (collectively "Defendants"), complaining that Defendants violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs. Specifically, Plaintiff alleges that Defendants have implemented an

---

[1] R. Docs. 40 & 44.
[2] R. Doc. 45.
[3] R. Doc. 44.
[4] R. Doc. 40.

unconstitutional policy that has resulted in Plaintiff not receiving appropriate treatment and accommodation for his inguinal hernia.[5]

Records indicate Plaintiff's first complaint of a left inguinal hernia was on September 9, 2016.[6] On October 26, 2016, Plaintiff's hernia was, for the first time, evaluated by Dr. Lavespere,[7] and on this same date, Dr. Lavespere completed the Louisiana Department of Corrections Referral Form for General Surgery and referred Plaintiff for surgery on his reducible, yet large, left inguinal hernia.[8] Between Plaintiff's diagnosis on September 9, 2016 and his surgery referral on October 26, 2016, Plaintiff was seen on several occasions for his hernia and related symptoms.[9] At a visit only weeks after his diagnosis, on September 23, 2016, a request to "escalate" was placed, and on October 5, 2016, a notation was made that a referral to the hernia clinic was pending.[10] On October 26, 2016, Plaintiff was also issued a temporary duty status to last six months with restrictions consistent with his diagnosis.[11] After the surgery referral from Dr. Lavespere, medical personnel

---

[5] In Plaintiff's Motion for Summary Judgment, he complains of new instances of conduct by LSP officials that allegedly constitute deliberate medical indifference. At the time of the filing of the original Complaint, the alleged acts of deliberate indifference were related to the policy that resulted in Defendants failing to provide surgery for Plaintiff's left inguinal hernia. As Plaintiff did not seek leave to amend his Complaint, the new instances mentioned, including failure to provide follow up care since surgery and allegedly forcing Plaintiff to perform duties he cannot perform, will not be considered. Plaintiff also discusses at length his need for specialized eye care. No complaints regarding eye care were made in Plaintiff's original Complaint and will not also be considered here. The only issues in this case are DPSC and LSP policies regarding hernia surgeries and the treatment of Plaintiff's left inguinal hernia.
[6] R. Doc. 44-11, p. 9. Also included in the evidence presented are medical records from years prior to Plaintiff's hernia diagnosis. These records do not indicate that Plaintiff had any complaints of a left sided hernia until September 9, 2016. R. Docs. 44-13, pp. 10-49. Mention is made in the records that Plaintiff had two prior surgeries to repair hernias and that he had pain in his right groin on December 2, 2014 and March 2, 2015, but no other mention is made of a hernia at those times, much less of a left inguinal hernia, as the only complaint was regarding Plaintiff's right side. Rather, it was specifically noted that Plaintiff had no hernia at the time. (R. Doc. 44-13, pp. 39-40). Despite the numerous visits with LSP medical personnel between March 2, 2015 and September 9, 2016, no complaints were noted in the medical records regarding a potential left sided hernia.
[7] R. Doc. 44-7, p. 13.
[8] R. Doc. 44-7, p. 12.
[9] Plaintiff was treated on September 20, 22, and 23, 2016 and October 5 and 13, 2016 for his left inguinal hernia. (R. Docs. 44-7, pp. 14-20; R. Docs. 44-11, pp. 1-9).
[10] R. Doc. 44-7, pp. 15 & 19.
[11] R. Doc. 44-12, p. 26. Plaintiff's restrictions were as follows: "no lifting greater than 15lbs, no pushing, no pulling over twenty-five (25) lbs, no sports, no hobby craft, no rodeo X six (6) months."

2

at LSP continued to monitor Plaintiff.[12] On May 10, 2017, Plaintiff received another surgery referral from Dr. John Morrison.[13] On June 12, 2017, Plaintiff underwent surgery to repair his left inguinal hernia at the Lallie Kemp Regional Medical Center.[14]

The Louisiana Department of Corrections, "Referral Guidelines, Hernia" provide, in pertinent part, as follows:

### Indications for Specialty Care Referral
- Hernia is non reducible
- Hernia is very large in size failing medical management
- Any signs/symptoms indicating incarceration or strangulation I.e. diminished cough reflex
- Significant pain/discomfort requiring narcotics/inpatient pain management[15]

Plaintiff alleges that this policy denies surgical intervention to all inmates with reducible hernias and delays treatment and surgical intervention until an inmate's condition has deteriorated and becomes emergent or life-threatening.[16] Plaintiff further alleges that this policy violates his right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment.

Plaintiff has sued all Defendants in their official capacities and seeks injunctive relief against all Defendants.[17] Plaintiff also named Dr. Lavespere and Dr. Singh in their individual capacities and seeks monetary relief against these two Defendants in addition to injunctive relief.[18]

---

[12] Plaintiff was seen by medical personnel at LSP on November 18 and December 27, 2016, and January 4 and 9, March 28, April 17, May 1 and 10, June 1, 2017.
[13] R. Doc. 44-12, p. 110.
[14] R. Doc. 44-12, p. 87.
[15] R. Doc. 44-10, p. 2.
[16] R. Doc. 1, p. 9.
[17] R. Doc. 1, pp. 1 & 31-32. Defendants incorrectly noted in their Memorandum in Support of Motion for Summary Judgment that all Defendants were sued in both their official and individual capacities. (R. Doc. 44-3, p. 7).
[18] R. Doc. 1, pp. 1 & 31-32.

## II.    Law & Analysis

### A.  Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[19] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[20] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[21] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[22] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[23] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[24] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[25]

---

[19] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[20] *Celotex Corp.*, 477 U.S. at 322.
[21] *Anderson*, 477 U.S. at 248.
[22] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[23] *Celotex Corp.*, 477 U.S. at 323.
[24] *Little*, 37 F.3d at 1075.
[25] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

However, under Fed. Rule. Civ. Proc. 56(c), a party must cite to evidence or show that the materials cited do not support the presence or absence of a dispute.

### B. Rights of Other Prisoners

The right to bring an action under the civil rights act is personal in nature and may not be asserted by third parties.[26] All persons who claim a deprivation of constitutional rights must prove some violation of their personal rights.[27] Insofar as Plaintiff's Complaint may be read to assert a deliberate indifference claim on behalf of other prisoners, such claims should be dismissed.

### C. Eighth Amendment Deliberate Indifference

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[28] Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue.[29] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[30] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[31] *Farmer* lays out both an objective prong, and a subjective prong.[32] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[33] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[34] The deliberate indifference standard sets a very high bar:

---

[26] *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986).
[27] *Id.*
[28] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).
[29] *Estelle v. Gamble*, *supra*.
[30] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).
[31] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[32] *Id.* at 837.
[33] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[34] *Id.*

the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[35] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[36]

First, to the extent Plaintiff claims that his primary care providers refused to diagnose a hernia earlier than September 2016, his claim cannot succeed, as he has not named any of his primary care providers as Defendants.[37] In Plaintiff's Complaint, which was filed over two years ago, he alleged he was "not certain of the identity of his assigned LSP primary physician, although Plaintiff has been interviewed by several LSP physicians employed at LSP, all of whom have perpetuated the policy, practice or custom of deliberately delaying access to surgery for this serious medical need."[38] Rather than naming his primary care providers, the Defendants named by Plaintiff have all allegedly played a part in implementing "an unconstitutional policy, practice or custom of denying or delaying corrective hernia surgery indefinitely after diagnosis."[39] Plaintiff's Complaint centers entirely on the implementation of a policy by officials responsible for various administrative tasks and for policy development at LSP and/or the Department of Public Safety and Corrections.

---

[35] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[36] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).
[37] Plaintiff's claim -- that he complained of an inguinal hernia before September 2016, but that his medical records were falsified -- is not actionable. R. Doc. 40, p. 12. *See Pierson v. Gonzales*, 73 Fed.Appx. 60 (5th Cir. 2003)("[P]ierson's allegation of false documentation also fails to state a cognizable 42 U.S.C. § 1983 claim.")
[38] R. Doc. 1, p. 11.
[39] R. Doc. 1, pp. 18-20. Oddly, Plaintiff also argues Falgout did not perform his job correctly because Falgout did not ensure the "strict enforcement of LSP and DPS&C policies requiring procurement of necessary surgery," even though Plaintiff alleges these policies are unconstitutional. (R. Doc. 20). Though Plaintiff's attempt to challenge the constitutionality of the policies and the failure of Falgout to follow the policies is inherently inconsistent, both claims are analyzed.

6

In order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed.[40] Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[41] Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[42] Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[43]

This Court has previously held that "[a] hernia does not automatically present a serious medical need for purposes of constitutional analysis."[44] Further, the exact policy complained of by Plaintiff has been held by this Court not to be unconstitutional as written:

> The Court has reviewed the referenced Hernia Referral Guidelines and, in contrast to Plaintiff, does not find them to be unreasonable or unconstitutional as written. It is undisputed that not all diagnosed incidences of hernia or hemorrhoids warrant surgical intervention, and the fact that a hernia may be easily reducible is one factor that militates in favor of conservative management. The referenced

---

[40] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[41] *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").
[42] *Lozano*, 718 F.2d at 768.
[43] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).
[44] *Crowl v. Vannoy*, No. 16-413-SDD-RLB, 2017 WL 3634185, at *5 (M.D. La. Aug. 1, 2017), citing *Warren v. Gusman*, 2017 WL 1373875 (E.D. La. Mar. 10, 2017): *report and recommendation approved*, No. CV 16-413-SDD-RLB, 2017 WL 3633442 (M.D. La. Aug. 23, 2017).

7

> Hernia Guidelines incorporate this concept and provide that, "[i]n general, no urgent condition exists if the hernia is REDUCIBLE or ASYMPTOMATIC EXCEPT FOR ITS PRESENCE". . . Notwithstanding, the Guidelines further recognize that other factors may exist that may militate in favor of additional evaluation for potential surgery or specialty care, including when the hernia is not reducible, is very large, is causing significant pain, or exhibits other complications such as incarceration or strangulation. Thus, the Guidelines specifically provide "Indications for Specialty Care Referral" that take these factors into account.[45]

As in *Davis*, here there is nothing in the record other than Plaintiff's unsubstantiated assertions that there is a "slow roll" policy at LSP that is meant to indefinitely delay surgery for non-life-threatening conditions. Further, the fact that Plaintiff was provided with hernia surgery when his condition was non-life-threatening disproves this assertion. Moreover, as in *Davis*, Plaintiff was treated regularly between the time of his initial diagnosis with a left inguinal hernia and his eventual surgery and, on multiple occasions, while Plaintiff was treated for complaints unrelated to his hernia, Plaintiff affirmatively voiced that he had no other medical complaints.

Accordingly, Plaintiff has not carried his burden of proof in establishing the existence of an unconstitutional policy implemented and employed at DPSC and/or LSP that has been the moving force behind an alleged denial of his constitutional rights in the form of deliberate indifference to his serious medical needs. Plaintiff's allegations essentially amount to a disagreement regarding the appropriate medical treatment for his condition, which is not sufficient to establish a constitutional violation. Despite Plaintiff's personal belief that surgical intervention was warranted for his hernia earlier than he received it, his medical records do not reflect that his complaints were ignored or that he was intentionally treated incorrectly. As indicated by the

---

[45] *Anthony Davis v. Raman Singh, et al.*, 16-cv-552-JWD-EWD (M.D. La.), R. Docs. 24, pp. 14-15 (Report and Recommendation) & 26 (Opinion adopting Report and Recommendation). The *Davis* case was referenced in Plaintiff's Complaint. R. Doc. 1, pp. 9 & 16.

medical records described herein, Plaintiff was consistently treated by medical personnel at LSP.[46] Further, Plaintiff has been provided with the surgical repair of his left inguinal hernia, and there is no suggestion in the record that any delay in obtaining such relief has resulted in substantial harm, which is a prerequisite for the viability of a claim of delay in the provision of medical care.[47] Accordingly, Plaintiff's claims against all Defendants regarding implementation of an unconstitutional policy are without merit.

To the extent Plaintiff's claims against Falgout may be read to allege liability of Falgout because he failed to follow the policy, these claims must also fail. Plaintiff has failed to present any evidence to support that contention. To the contrary, Plaintiff has only presented evidence that Falgout followed the policy.[48] Thus, any claims against Falgout for failure to follow the hernia policy are also without merit.

As there are no genuine issues of material fact in dispute, Defendants are entitled to judgment as a matter of law. Consequently, Defendants motion for summary judgment should be granted,[49] and Plaintiff's motion for summary judgment should be denied.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment[50] be **DENIED**.

---

[46] *See Clark v. Adams*, 233 Fed.Appx. 400, (5th Cir. 2007) (affirming district court's dismissal of deliberate indifference claims as frivolous finding that treatment of inmate's hernia with medication and a truss, rather than a referral for surgery, was not deliberate indifference despite the plaintiff's allegations that the treatments provided were ineffective, that he should have been referred for corrective surgery and that the decision not to refer him for corrective surgery was economic).

[47] *See Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Considering that Plaintiff has been provided with surgical intervention in connection with his left inguinal hernia, Plaintiff has failed to show that he is entitled to injunctive relief in this case. Moreover, since the pertinent policy is not unconstitutional, Plaintiff's sought-after injunctive relief barring the continuing use of this policy is without merit.

[48] *See e.g.*, R. Doc. 40-1, p. 3 ("Defendants Singh, Lavespere, and Falgout have all played personal roles in implementing this policy of denying surgery to prisoners with reducible hernias.")

[49] This Court also previously dismissed any potential State law claims of Plaintiff. (R. Docs. 36 & 38).

[50] R. Doc. 40.

9

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment[51] be **GRANTED**, and that this proceeding be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on August 9, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[51] R. Doc. 44.

10